## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHARITI A. LANE,

      Plaintiff,

   v.

BAYHEALTH MEDICAL CENTER, INC.,

      Defendant.

Civil Action No. 23-102-RGA

MEMORANDUM OPINION

Gary E. Junge (argued), SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE,

    Attorney for Plaintiff.

Stacy A. Scrivani, Alexis R. Gambale, STEVENS & LEE, P.C., Wilmington, DE; Lisa M. Scidurlo, STEVENS & LEE, P.C., King of Prussia, PA; Michael M. Greenfield (argued), Sasha A. Phillips, STEVENS & LEE, P.C., Philadelphia, PA; Theresa M. Zechman, STEVENS & LEE, P.C., Lancaster, PA,

    Attorneys for Defendant.

February 5, 2024

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant's Motion to Dismiss.  (D.I. 13).  I have considered the parties'
briefing. (D.I. 14, 15, 17).  I heard oral argument on January 4, 2024 on a group of cases,
including the present action, involving religious discrimination claims with regards to
Defendant's COVID-19 vaccine policy.  (Hearing Tr.).[1]  For the reasons set forth below, this
motion is GRANTED in part and DISMISSED as moot in part.

## I.     BACKGROUND

This case stems from the COVID-19 pandemic and a healthcare provider's efforts to
respond to government vaccination policy.  The Amended Complaint (D.I. 7) is the operative
complaint and alleges the following facts.

On August 12, 2021, Governor John Carney ordered all Delaware state health care
employees either to become vaccinated for the COVID-19 virus by September 30, 2021 or to
submit to regular testing for the COVID-19 virus.  In November 2021, the Centers for Medicare
& Medicaid Services ("CMS") issued a COVID-19 vaccine mandate requiring certain health care
facilities, including Defendant, to ensure their staff members were all either vaccinated against
COVID-19 or had obtained medical or religious exemptions to taking the vaccine.

Pursuant to Defendant's vaccination policy, employees seeking religious exemption
requests were required to submit forms explaining the religious beliefs that formed their basis of
their objection to the COVID-19 vaccine.  (*See* D.I. 7-1, Ex. A).  Employees could attach
additional materials, such as letters from religious leaders, to support their exemption request.
(*Id.*).

---

[1] Citations to the transcript of the argument are in the format "Hearing Tr. at __."

Employees who had their religious exemption requests rejected, and continued to refuse

the COVID-19 vaccine, were terminated on February 28, 2022.  Plaintiff was one of these

employees.  Plaintiff subsequently filed the present suit raising religious discrimination claims

against Defendant under Title VII (Count I) and the Delaware Discrimination in Employment

Act ("DDEA") (Count II).  *See* 42 U.S.C. § 2000e; DEL. CODE ANN. tit. 19, § 711.  Defendant

moves to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6).  (D.I. 13).

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim

showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) allows the

accused party to bring a motion to dismiss the claim for failing to meet this standard.  A Rule

12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint

as true and viewing them in the light most favorable to the complainant, a court concludes that

those allegations "could not raise a claim of entitlement to relief."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than

labels, conclusions, or a "formulaic recitation" of the claim elements.  *Id.* at 555 ("Factual

allegations must be enough to raise a right to relief above the speculative level . . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact).").

Moreover, there must be sufficient factual matter to state a facially plausible claim to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facial plausibility standard is satisfied when the

complaint's factual content "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  *Id.* ("Where a complaint pleads facts that are merely

3

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B.  Failure to Accommodate

Title VII makes it unlawful for an employer to discriminate against an employee based on that employee's religion.  42 U.S.C. § 2000e-2(a)(1).  The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII based on a failure to accommodate theory, an employee must show that (1) the employee "held a sincere religious belief that conflicted with a job requirement," (2) the employee "informed their employer of the conflict," and (3) the employee was "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017).  "Plaintiffs are not required to establish each element to survive a motion to dismiss; they must simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

A district court's inquiry into whether a plaintiff has plausibly plead the first prong of a prima facie religious discrimination claim is limited to determining whether the belief is (1) "sincerely held" and (2) religious within the plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339 (1970) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

With respect to the first prong of this inquiry, "[w]hether a belief is sincerely held is a question of fact." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672, at *6 (E.D. Pa. Sept. 27, 2021) (citing *Seeger*, 380 U.S. at 185).

With respect to the second prong, determining whether a plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). "[I]t is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. of Maplewood*, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (citing *Fallon*, 877 F.3d at 490). "The notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief. *Africa*, 662 F.2d at 1035. "[T]he very concept of ordered liberty" precludes allowing any individual "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

The Third Circuit has adopted the three *Africa* factors to differentiate between views that are "religious in nature" and those that are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490–91 (quoting *Seeger*, 380 U.S. at 164); *Africa*, 662 F.2d at 1032. A judge must determine whether the beliefs in question (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) "are comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1032) (cleaned up).

The *Africa* court tackled the issue of analyzing non-traditional "religious" beliefs or practices by "look[ing] to familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same

5

purposes, as unquestioned and accepted 'religions.'" *Africa*, 662 F.2d at 1032 (quoting *Malnak v. Yogi*, 592 F.2d 197, 205 (3d Cir. 1979) (Adams, J., concurring)); *Fallon*, 877 F.3d at 491 (describing the process as considering "how a belief may occupy a place parallel to that filled by God in traditionally religious persons."). The *Africa* factors were adopted as "three 'useful indicia' to determine the existence of a religion" pursuant to this "definition by analogy" approach. *Africa*, 662 F.2d at 1032. Their applicability to a person who professes a more widely recognized, "traditional" religion is a little less obvious.[2] However, because individuals cannot "cloak" all personal beliefs "with religious significance," a court must still scrutinize whether a sincerely held belief, asserted by someone claiming a recognized religion, is sufficiently connected to their religion. *Id.* at 1035; *see Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023) ("[T]he issue in this case is not whether plaintiff has asserted a plausible claim that she has a personal religious faith. . . .  Plaintiff does not claim that she has suffered unlawful discrimination because she believes in God.  Rather, she claims that she has suffered unlawful discrimination because she was required to comply with the COVID-19 vaccination requirement.  The critical question, therefore, is whether the complaint alleges sufficient plausible facts from which it could be reasonably inferred that being vaccinated against COVID-19 violates a tenet or principle of her religious belief.").

Of course, individuals may have religious beliefs which are not widely accepted within their religion. *See Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 708 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or

---

[2] Plaintiff follows a recognized religion that already meets the three *Africa* factors.  (*See* D.I. 7 ¶ 17).

the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee."). Beliefs of this nature would, logically, fail to be sufficiently linked to the individual's claimed religion and need to satisfy the *Africa* standard to qualify as religious beliefs.

"[The DDEA] prohibits employment discrimination in statutory language nearly identical to Title VII." *Spady v. Wesley Coll.*, 2010 WL 3907357, at *3 n. 4 (D. Del. Sept. 29, 2010); *see* DEL. CODE ANN. tit. 19, § 711(b). "[Courts] evaluate plaintiffs' DDEA claims under the same framework used to evaluate Title VII claims." *Spady*, 2010 WL 3907357, at *3 n. 4 (citing *Witcher v. Sodexho, Inc.*, 247 F. App'x 328, 329 n. 1 (3d Cir. 2007); *Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 83 n. 5 (3d Cir. 2015) (instructing that "the standards under Title VII and the DDEA are generally the same").

### C. Disparate Treatment

To establish a prima facie case of religious discrimination under Title VII based on a disparate treatment theory, an employee must show that (1) the employee is "a member of a protected class," (2) the employee "suffered an adverse employment action," and (3) "nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001). Depending on whether the plaintiff proceeds under a pretext or mixed-motive theory, they must ultimately prove that their protected status was either a "motivating" or a "determinative" factor in the employer's challenged action. *Connelly*, 809 F.3d at 787–88.

III.    **DISCUSSION**

A.  **Failure to Accommodate**

At this stage of the case, only one issue exists—whether Plaintiff has sufficiently pled

that the belief upon which her objection to receiving the COVID-19 vaccine was based is a

religious belief.  "[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts

regarding the nature of her belief system, as well as facts connecting her objection to that belief

system."  *Aliano*, 2023 WL 4398493, at *5.  "In other words, she must demonstrate that her

objection arises from a subjective belief that is tied to her belief system which meets the *Africa*

factors."  *Id.* (citing *Africa*, 662 F.2d at 1032; *Fallon*, 877 F.2d at 492–93 (concluding that the

plaintiff's "anti-vaccination beliefs are not religious" but providing "[t]his is not to say that anti-

vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can,

and in those circumstances, they are protected")); *see also Brown v. Child.'s Hosp. of Phila.*, 794

F. App'x 226, 227 (3d Cir. 2020) ("[I]t is not sufficient merely to hold a 'sincere opposition to

vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious

belief.'" (quoting *Fallon*, 877 F.3d at 490)); *Griffin*, 2023 WL 4685942, at *5; *Ellison v. Inova*

*Health Care Servs.*, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023) (A plaintiff should

"provide[] sufficient allegations regarding [their] subjective personal beliefs, how those beliefs

are related to [their] faith, and how those beliefs form the basis of [their] objection to the

COVID-19 vaccination.").  Defendant argues that Plaintiff's objection to the vaccine stems from

Plaintiff's personal moral code rather than from her religious beliefs.[3]  (D.I. 14 at 8–15; D.I. 17

at 5–9).

_____

[3] Defendant does not challenge Plaintiff's assertion that her religious faith of non-denominational
Christianity meets the *Africa* test.  Rather, Defendant argues the beliefs on which Plaintiff's
objection to the vaccine is based are secular beliefs based on Plaintiff's personal moral code, as

Plaintiff identifies two categories of beliefs which she argues qualify as religious beliefs. (*See* D.I. 20 at 6 (placing Plaintiff under the "Cannot change God Given Immune System/Healing Power rests with God" and "Cannot Defile Body Because it is a Temple of the Holy Spirit" categories); D.I. 7 ¶ 19). For the following reasons, I find Plaintiff has failed to adequately plead facts that show either of these categories are religious beliefs that form the basis of her objection to the COVID-19 vaccine.

### 1. "God-given Immune System" Belief

Plaintiff's exemption form admits, "I have not been able to find any Scripture from the Bible stating verbatim that I should not vaccinate." (D.I. 7-1, Ex. A, at 3 of 4). She insists, however, "I understand through my translation of the Word of God that the [COVID-19] immunization is contrary to my genuine religious beliefs." (*Id.*). She provides a list of Bible verses that she interprets to "convey[] [her] strong refusal to the [COVID-19] vaccine." (*Id.* at 3–4 of 4; *see, e.g.*, Matthew 9:12 (". . . those who are well have no need of a physician, but those who are sick."); 1 Timothy 5:8 ("But if anyone does not provide for his relatives, and especially for the members of his household, he has denied the faith and is worse than an unbeliever.")). Plaintiff asserts, "I do not believe that immunizations can heal, as that is God's job." (*Id.* at 4 of 4). Referencing the Bible verses, she states, "The Bible states that I should visit the doctor when I am sick, not well; therefore, if I were to receive the immunization and become ill[,] I would not be able to provide for my family, thus going against God's Word." (*Id.*).

---

opposed to religious beliefs that form a part of Plaintiff's Christian faith. (*See* D.I. 14 at 8–15; D.I. 17 at 5–9). I therefore address only the questions at issue: whether Plaintiff has sufficiently connected her objection to the vaccine to a religious belief tied to her Christian faith or whether the beliefs that form the basis of Plaintiff's objection would otherwise satisfy the *Africa* standard.

Plaintiff's objection relies on the premise that she could "become ill" if she "were to receive the immunization." (*Id.*). Plaintiff's belief is "predicated fundamentally on her concerns with the safety of the vaccine." *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *5 (W.D. Wis. Mar. 10, 2023). Plaintiff does "not articulate any religious belief that would prevent her from taking the vaccine if she believed it was safe." *Id.*

The dependence of Plaintiff's objection to the COVID-19 vaccine on her scientific and medical beliefs is also clear from her stance on other vaccines. Plaintiff states, "I was brought up to follow rules and guidelines set by trained experts," and, "Most times this feels right; therefore, I have received immunizations in the past." (D.I. 7-1, Ex. A, at 3–4 of 4). It is therefore clear there is no religious belief preventing Plaintiff from receiving vaccinations in general. Plaintiff's exemption form, however, fails to describe a religious belief that would lead her to object to the COVID-19 vaccine in particular. Plaintiff instead appears to differentiate the vaccines based on whether it "feels right" to adhere to the "rules and guidelines set by trained experts" and based on her medical judgment regarding the "risks and benefits" of the vaccine.[4] (*Id.* at 4 of 4 ("I have reviewed the facts, weighed risks and benefits, and sought God and His Word in order to help me come to a decision regarding the [COVID-19] vaccine.")). Plaintiff's medical beliefs do not qualify as religious beliefs under *Africa*. "It takes more than a generalized aversion to harming the body to nudge a practice over the line from medical to religious." *Geerlings*, 2021 WL 4399672, at *7; *see also Fallon*, 877 F.3d at 492. "The notion that we should not harm our bodies is ubiquitous in religious teaching, but a concern that a treatment may do more harm than

---

[4] Plaintiff's exemption form does state, "I see a clear difference between helping a health body with medical interventions versus a sick body." (D.I. 7-1, Ex. A, at 4 of 4). I am uncertain on how this notion helps differentiate Plaintiff's stance on the COVID-19 vaccine from her stance on other vaccines, as both still fall under the category of immunizations used as part of preventative care.

good is a medical belief, not a religious one." *Geerlings*, 2021 WL 4399672, at *7 (quoting *Fallon*, 877 F.3d at 492) (cleaned up).

At oral argument, Plaintiff's counsel took the position that "[h]arming my body is the religious belief" expressed by Plaintiff. (Hearing Tr. at 34:15–35:12 ("[I]f I believe [the vaccine] is going to cause long-term harm to my body, then my truly-held religious belief is that my body is a temple of the Holy Spirit, and I should put nothing in my body that's going to harm it. That's religious belief.")). Plaintiff's counsel effectively seeks to "cloak[] with religious significance" Plaintiff's concern that the vaccine will harm her body. *Africa*, 662 F.2d at 1035. The Third Circuit has already rejected such a position. *Id.* (explaining "[t]he notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief). Several other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have also found such medical judgments do not qualify as religious beliefs. *See, e.g.*, *McKinley v. Princeton Univ.*, 2023 WL 8374486, at *4 (D.N.J. Dec. 1, 2023); *Ellison*, 2023 WL 6038016, at *5; *Winans v. Cox Auto, Inc.*, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023); *Ulrich v. Lancaster Gen. Health*, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023); *Passarella*, 2023 WL 2455681, at *5–7; *Geerlings*, 2021 WL 4399672, at *7; *contra, Aliano*, 2023 WL 4398493, at *8–9.

Plaintiff's insistence that she "sought God and His Word in order to help [her] come to a decision regarding" the vaccine does not save her claim. (D.I. 7-1, Ex. A, at 4 of 4). Allowing Plaintiff the ability to object to anything based on the practice of "praying on it" would grant her the type of "blanket privilege" that does not qualify as religious belief under *Africa*. *Griffin*, 2023 WL 4685942, at *6–7. "'[T]he very concept of ordered liberty precludes allowing' [Plaintiff], or any other person, a blanket privilege 'to make his own standards on matters of

conduct in which society as a whole has important interests.'" *Id.* (citing *Yoder*, 406 U.S. at 215–16). Several other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have similarly found such beliefs to amount to "blanket privileges" that do not qualify as religious beliefs. *See, e.g.*, *Lucky*, 2023 WL 7095085, at *4–7; *Ellison*, 2023 WL 6038016, at *5; *Ulrich*, 2023 WL 2939585, at *5; *Blackwell v. Lehigh Valley Health Network*, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023); *Finkbeiner*, 623 F. Supp. 3d at 465.

Plaintiff's counsel argued that whether a belief amounted to a "blanket privilege" presents an issue of sincerity that should be reserved for a jury. (Hearing Tr. at 33:3–14). The *Africa* court, however, indicated that a principal reason that courts engaged in the practice of making "uneasy differentiations" between religious and nonreligious beliefs was to prevent any individual from retaining a "blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *See Africa*, 662 F.2d at 1031. I find it proper to consider this question when dealing with religiosity. As noted above, other district courts have likewise examined the "blanket privilege" question at the motion to dismiss stage.

### 2. "Body is a Temple" Belief

Plaintiff's exemption form includes the quote, "Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God? You are not your own . . . [.]" (D.I. 7-1, Ex. A, at 3 of 4 (citing 1 Corinthians 6:19)). Plaintiff, however, provides no information regarding how this "Body is a Temple" belief prohibits her from receiving the COVID-19 vaccine. "Plaintiff does not describe her religious beliefs or principles in any meaningful way, or how they relate to vaccines generally, or the COVID-19 vaccine specifically." *Griffin*, 2023 WL 4685942, at *7. Plaintiff "must provide more than conclusory

allegations that a belief is religious; [she] must allege facts explaining how a subjective belief is religious in nature and connect [her] objection to that belief." *Ellison*, 2023 WL 6038016, at *7.

For the reasons stated above, I find Plaintiff's Complaint does not plausibly allege that Plaintiff's objection to receiving the COVID-19 vaccine was based on a sincerely held religious belief. At oral argument, Plaintiff's counsel agreed that, in the event that I found a plaintiff had not adequately pled a religious belief, dismissal with prejudice was the proper path forward. (Hearing Tr. at 65:1–9). I will therefore dismiss Plaintiff's failure to accommodate claim with prejudice.

### B. Disparate Treatment

Defendant argues that Plaintiff has failed to sufficiently plead a religious discrimination claim under Title VII based on disparate treatment. (D.I. 14 at 15). Plaintiff states that she has not yet pled disparate treatment. (D.I. 15 at 18). I agree with Defendant that Plaintiff's assertion of "differential treatment" presents some confusion about whether a disparate treatment claim has been raised. (D.I. 17 at 9 n. 20). Nevertheless, since Plaintiff states she is not now pleading disparate treatment, I accept that she is not, and I will dismiss Defendant's argument as moot.

### C. Plaintiff's DDEA Claims

A federal court has supplemental jurisdiction over a state law claim when the claim "arise[s] out of a common nucleus of operative fact" with the claims over which the court has original jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see* 28 U.S.C. § 1367(a). A federal court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). Given my disposition of Plaintiff's Title VII claims, I decline to

exercise supplemental jurisdiction over Plaintiff's remaining DDEA claims.  I will dismiss

Plaintiff's claims under Count II without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 13) is GRANTED in part

and DISMISSED as moot in part**.**

An appropriate order will issue.